U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 SEP -4 A 10:34

CLERK
BY ___
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| WENDY M.V. et al., Plaintiffs, v. JOSEPH B. EDLOW,[1] in his official capacity as Director of U.S. Citizenship and Immigration Services, Defendants. | ) | Case No. 2:24-cv-1128 |

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 25, 26)**

Plaintiffs bring this case under Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq., challenging a Final Rule promulgated by U.S. Citizenship and Immigration Services ("USCIS") in 2024. That rule, codified at 8 C.F.R. §§ 212, 214, 245, and 274a, amends the process and conditions under which USCIS reviews applications for T nonimmigrant status ("T visas") to determine if they are bona fide. Specifically, Plaintiffs challenge a set of provisions codified at 8 C.F.R. § 214.205(a), (a)(1) that generally limits eligibility for bona fide determinations ("BFDs") to applicants who filed for T visas after the Final Rule's effective date. They ask the court to set aside that portion of the Final Rule and order USCIS to conduct BFD review of their applications.

[1] Plaintiffs originally instituted this action against Ur M. Jaddou, then Director of the United States Citizenship and Immigration Services. Joseph B. Edlow is currently the Director of USCIS. Under Fed. R. Civ. P. 25(d) a public "officer's successor is automatically substituted as a party."

Plaintiffs have filed a motion for summary judgment (Doc. 25), and Defendant ("the Government") has filed a cross-motion for summary judgment (Doc. 26). The court elects to rule on the papers.

**Statutory and Regulatory Background**

As this case concerns a challenge to an agency's issuance of a revised rule under authority delegated by federal statute, the court begins by reviewing the relevant statutory provisions and administrative regulations.

**T Visa Program and Initial T Visa Status Regulations**

In 2000, Congress enacted the Trafficking Victims Protection Act ("TVPA"), which created the T nonimmigrant visa program for noncitizen victims of human trafficking. *See* Pub. L. No. 106-386, § 107(e)(1), 114 Stat. 1464 (Oct. 28, 2000). The statute provides for the issuance of up to 5,000 T visas to qualifying noncitizens per year. 8 U.S.C. § 1184(o)(2). In order to be approved for T nonimmigrant status, applicants must demonstrate that they (1) have been the victim of a severe form of human trafficking; (2) are present in the United States on account of such trafficking; (3) have complied with all reasonable requests for assistance in the investigation and prosecution of human trafficking; and (4) would suffer extreme hardship involving unusual and severe harm if removed. *Id.* § 1101(a)(15)(T)(i). The TVPA, which amended certain provisions of the Immigration and Naturalization Act ("INA"), delegates administration of the newly created program to the Department of Homeland Security ("DHS"), and by extension U.S. Citizenship and Immigration Services ("USCIS"), which is a component of DHS.

The TVPA did not merely establish the new T nonimmigrant visa status. It also provided for interim benefits to noncitizen victims of severe forms of trafficking in persons, the statutory definition of which includes those noncitizens certified by the Secretary of Health and Human

Services ("HHS"), upon consultation with DHS, to have "made a bona fide application for a visa under section 1105(a)(15)(T)(i)." 22 U.S.C. § 7105(b)(1)(C), (E). The TVPA mandates that various federal agencies provide benefits and services to these applicants prior to USCIS's final adjudication of their T visa applications:

> [A]n alien who is a victim of a severe form of trafficking in persons, or an alien classified as a nonimmigrant under section 1101(a)(15)(T)(ii) of [8 U.S.C.], shall be eligible for benefits and services under any Federal or State program or activity funded or administered by [the Secretary of Health and Human Services, the Secretary of Labor, the Board of Directors of the Legal Services Corporation, and the heads of other Federal agencies] to the same extent as an alien admitted to the United States as a refugee under section 1157 of [8 U.S.C.].

*Id.* § 7105(b)(1)(A). Elsewhere, the TVPA gives DHS the discretionary authority to grant T visa applicants administrative stays of removal during the pendency of the agency's review of their application if DHS "determines that an application for [T] nonimmigrant status . . . sets forth a prima facie case for approval . . . ."[2] 8 U.S.C. § 1227(d)(1).

After Congress enacted the TVPA, the Immigration and Naturalization Service ("INS")—USCIS's predecessor—promulgated the initial set of T nonimmigrant status regulations in an interim rule published in January 2002. *New Classification for Victims of Severe Forms of Trafficking in Persons; Eligibility for "T" Nonimmigrant Status*, 67 Fed. Reg. 4784 (Jan. 31, 2002). The rule gave effect to the sections of the TVPA codified at 22 U.S.C. § 7105(b) and 8 U.S.C. § 1227(d)(1) by providing for the administration of interim benefits to bona fide applicants. Recognizing "the importance of making timely determinations of *bona fide* applications in order for victims of severe forms of trafficking to receive critical health and other social services as soon as possible," the 2002 rule provided that "[o]nce an application for

---

[2] In a subsequent regulation, USCIS stated that it deems the statutory meaning of "prima facie case for approval" to be satisfied by its determination that an application is bona fide. 89 Fed. Reg. 34875 n.15 (Apr. 30, 2024).

T-1 nonimmigrant status is determined to be *bona fide* by the service, an applicant age 18 or older may apply to HHS to be certified to receive certain benefits and services to the same extent as refugees . . . ."[3] 67 Fed. Reg. 4789–90. In addition, the 2002 rule exercised the agency's discretion under § 1227(d)(1) by providing automatic stays of removal for noncitizens determined to have made bona fide T visa applications. 8 C.F.R. § 214.11(d)(9) (2002), 67 Fed. Reg. 4797. Finally, the INS committed to granting deferred action or parole to bona fide applicants, allowing them to apply for employment authorization during the pendency of the agency's full merits review of their applications.[4] 67 Fed. Reg. 4790; *see* 8 C.F.R. § 274a.12(c)(11) (providing that noncitizens with deferred action may apply for work authorization).

The 2002 rule also laid out the review process and criteria by which the INS issued T visa applicants BFDs. The agency deemed an application bona fide if, after initial review:

> [The application] is properly filed, there appears to be no instance of fraud in the application, the application is complete . . . , the application presents *prima facie* evidence of each element to show eligibility for T-1 nonimmigrant status, and [the INS] has completed the necessary fingerprinting and criminal background checks.

8 C.F.R. § 214.11(k)(1) (2002), 67 Fed. Reg. 4800. Under the language of the 2002 rule, the INS's BFD review process was administered on a non-discretionary basis: "Once an application is submitted to the [INS], the [INS] *will* conduct an initial review to determine if the application

---

[3] Recognizing the TVPA mandate stating that "an alien who is a victim of a severe form of trafficking in persons . . . shall be eligible" for the same federal benefits and services extended to refugees, HHS stated in a contemporaneous regulation that it would provide, on a nondiscretionary basis, certification letters to bona fide T visa applicants entitling them to said benefits. *See* 67 Fed. Reg. 36623 (May 24, 2002).

[4] Applicants with automatic stays of removal were also eligible to receive employment authorization. 67 Fed. Reg. 4790.

is a *bona fide* application for T nonimmigrant status." 8 C.F.R. § 214.11(k)(1) (2002), 67 Fed. Reg. 4800 (emphasis added).

**BFD Review Under the 2016 Interim Final Rule**

In 2003, responsibility for the adjudication of T visa applications passed from the INS to DHS's Bureau of Citizenship and Immigration Services (now USCIS). In 2009, responding to stakeholder reports that "the inability of T . . . non-immigrant visa applicants to work while their applications are pending is a major roadblock for victims seeking relief," the Acting Citizenship and Immigration Services Ombudsman recommended that USCIS "[f]ind alternatives for T visa non-immigrant applicants to obtain work authorization while their applications are pending." Citizenship & Immigr. Servs. Ombudsman, U.S. Dep't of Homeland Sec., *Improving the Process for Victims of Human Trafficking and Certain Criminal Activity: The T and U Visa* at 2, 9 (Jan. 29, 2009), https://www.dhs.gov/xlibrary/assets/cisomb_tandu_visa_recommendation_2009-01-26.pdf [https://perma.cc/UWE6-752N]. Michael Aytes, the Acting Deputy Director of USCIS, responded that because USCIS did not have a "backlog" of T visa applications, "focusing on issuing interim [employment authorization documents] is not necessary." Memorandum from Michael Aytes, Acting Deputy Dir., U.S. Citizenship & Immigr. Servs., to Richard Flowers, Acting Citizenship & Immigr. Servs. Ombusdman, *Response to Recommendation 39: "Improving the Process for Victims of Trafficking and Certain Criminal Activity: The T and U Visas"* (May 22, 2009). At the time, the agency believed that it was "more efficient to adjudicate the entire [T visa application]" than to undertake a separate BFD review process. *Id.* Aytes allowed, however, that, "in the event that processing times should exceed 90 days, USCIS will conduct bona fide determinations for the purpose of issuing employment authorization." *Id.*

In 2016, USCIS issued an Interim Final Rule ("IFR") that preserved the structure of the prior two-step BFD review process. As to the first step of this initial review, the 2016 IFR largely adopted the language of the 2002 interim rule, changing the relevant provision only by substituting the agency's name for the INS and adding a reference to the subsection defining the substantive criteria of that review: "Once an alien submits an application for T-1 nonimmigrant status, USCIS will conduct an initial review to determine if the application is a bona fide application for T-1 nonimmigrant status under the provisions of paragraph (e) of this section." 8 C.F.R. § 214.11(d)(7) (2016). Paragraph (e), meanwhile, added one requirement to the criteria defined in the 2002 rule: that the applicant be admissible to the United States, have applied for a waiver of a ground of inadmissibility described in § 212(d)(13) of the INA, or have already been granted a waiver by USCIS. 8 C.F.R. § 214.11(e)(1)(v)(A)–(B) (2016). This subsection of the 2016 IFR did not, however, alter the non-discretionary nature of this initial review.

Under the language of the 2016 IFR, once USCIS issued an applicant a BFD, the second step of the agency's review proceeded to consider whether to grant the applicant deferred action and employment authorization. 81 Fed. Reg. 92279 (Dec. 19, 2016). The 2016 IFR preserved the provision of the 2002 rule stating that issuance of a BFD "automatically stays the execution of any final order of [the applicant's] removal, deportation, or exclusion." 8 C.F.R. § 214.11(e)(3) (2016).

At the same time, the 2016 IFR reiterated USCIS's view that, in light of manageable processing times for full merits adjudications, its BFD review was generally unnecessary. In response to a public comment recommending that USCIS issue a BFD within 90 days of its receipt of a T visa application, the agency stated:

> Since 2002, USCIS has received fewer applications for T nonimmigrant status than were expected. USCIS generally adjudicates the merits of

> T nonimmigrant applications as quickly as it can make a bona fide determination. Nevertheless, in the event of processing backlogs, DHS recognizes that a bona fide determination may offer a victim of trafficking some protection for immigration status purposes, employment authorization, and the availability of public benefits through HHS.

81 Fed. Reg. 92279. While USCIS declined to guarantee a BFD within 90 days in every case because the determination depended on the completion of biometric and background checks, it stated that "[t]ypically, these checks will be completed within 90 days . . . ." *Id.*

By 2024, the volume of T visa applications had ballooned, such that USCIS's full merits review of T visa applications averaged 458 days. 89 Fed. Reg. 34908 (Apr. 30, 2024). Despite these increased processing times—and an agency regulation describing the process as mandatory—USCIS continued to forego BFD review "outside of litigation cases due to resource constraints and the inefficiencies of the . . . process." *Id.* at 34875. After DHS reopened the public comment period for the 2016 IFR for 60 days in July 2021, commenters emphasized that "BFDs are much more important given increased processing times," and that "USCIS' failure to conduct BFDs has had a negative impact on trafficking survivors in removal proceedings . . . ." *Id.* In response, the agency stated:

> DHS acknowledges that processing times have increased in recent years. DHS also understands the important stabilizing benefits the BFD can provide to trafficking survivors, and that a lack of a viable BFD process can have negative impacts on victims. DHS is committed to implementing a streamlined and operationally efficient BFD process through the final rule and has codified a new BFD process at new 8 C.F.R. § 214.205, consistent with DHS's victim-centered approach.

*Id.* at 34875–76. It is against the backdrop of these developments that USCIS promulgated its revised, two-step BFD review process.

**BFD Review Under the 2024 Final Rule**

The provisions of § 214.205 substantially alter the BFD process provided for in the 2016 IFR in two principal ways. First, the Final Rule limits the scope of the first step of the agency's

review. USCIS no longer considers whether (1) the application appears to be fraudulent; (2) the application includes prima facie evidence of each eligibility requirement for T nonimmigrant status; or (3) the applicant is admissible to the United States, has filed an admissibility waiver, or already been granted such a waiver by USCIS. Today, the agency's initial review asks only whether (1) the application is complete,[5] (2) the applicant has submitted a signed personal statement, and (3) the results of initial background checks are complete, and the agency's review has determined the applicant does not present national security concerns. *Compare* 8 C.F.R. § 214.11(e) (2016) *with* 8 C.F.R. § 214.205(a)(2).

The second step of the agency's BFD review is essentially preserved from the 2016 IFR. As before, once the agency issues a BFD, it considers whether to extend the applicant the discretionary benefits of deferred action and employment authorization. 8 C.F.R. § 214.205(e). As before, USCIS's issuance of a BFD automatically stays any final order of removal, deportation, or exclusion. 8 CFR § 214.204(b)(2)(iii). The Final Rule amends 8 C.F.R. § 274.12 by adding subsection (c)(40), which creates a new category of employment authorization specifically for T visa applicants issued a BFD.

The second major change—and the focus of this case—is that the Final Rule no longer guarantees BFD review for all T visa applicants. For T visa applications filed on or after the Final Rule's effective date of August 28, 2024, USCIS undertakes the initial BFD review without exception. 8 C.F.R. § 214.205(a). For those filed before that date, however, USCIS provides BFD review only under certain conditions: "If an Application for T Nonimmigrant Status was

[5] Unlike the standard for completeness under the 2016 IFR, which required prima facie evidence of each eligibility requirement for T nonimmigrant status, an application is considered complete under the Final Rule if it includes (1) a signed personal statement attesting that the applicant meets each eligibility requirement and (2) any credible evidence that supports any of the requirements. *See* 8 C.F.R. §214.204(c).

pending as of August 28, 2024, and additional evidence is required to establish eligibility for principal T nonimmigrant status, USCIS will issue a Request for Evidence, and conduct a bona fide review based on available evidence." 8 C.F.R. § 214.205(a)(1).

The Final Rule is silent as to BFD review of applications that were pending as of the effective date but do *not* require additional evidence to establish the applicant's eligibility for a T visa. For these applicants, the Final Rule effectively codifies what had been the agency's practice—contra the language of the 2016 IFR—of forgoing BFD review altogether and proceeding directly to a full merits adjudication. USCIS thus provides no process by which applicants who applied for T visas before the effective date, and whose applications do not require USCIS to issue a request for evidence ("RFE"), to receive an automatic stay of removal, *see* 8 C.F.R. §214.205(g)(1), or employment authorization and deferred action, *see* 8 C.F.R. § 274.12(c)(40), during the pendency of USCIS's full merits review.

**Factual Background**

The plaintiffs in this consolidated case[6] are 40 T visa applicants who applied before the Final Rule's effective date. (Doc. 6 ¶¶ 78–227.) None of them has received a BFD under the 2024 Final Rule. (*Id.* ¶ 76.)

**Legal Standard**

The APA requires the reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

> An agency action is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an

[6] On February 3, 2026, the court granted the parties' joint motion to consolidate *Wendy M.V. et al. v. Edlow*, 24-cv-1128 with *Jose V.S. v. Edlow*, 24-cv-1514. *Wendy M.V.* was designated as the "lead" case, and *Jose V.S.* was terminated. (*See* Docket, 24-cv-1514.)

> important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Kakar v. USCIS*, 29 F.4th 129, 132 (2d Cir. 2022) (quoting *Alzokari v. Pompeo*, 973 F.3d 65, 70 (2d Cir. 2020)).

Where an APA-based challenge to agency action presents "a pure question of law, a district court's procedural decision to award summary judgment is generally appropriate." *Aleutian Cap. Partners, LLC v. Scalia*, 975 F.3d 220, 229 (2d Cir. 2020). And "the question whether an agency's decision is arbitrary and capricious is a legal issue amenable to summary disposition." *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 541 (S.D.N.Y. 2012) (cleaned up). But the ordinary summary judgment standard under Fed. R. Civ. P. 56 does not apply. *See New York v. U.S. Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 516 (S.D.N.Y. 2019); *see also* L.R. 56(a) (statement of undisputed material facts not required for motions challenging administrative actions under the APA). In making its determination, the court is required to "review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706.

In reviewing an agency action, the court is "bound by traditional administrative law principles." *Kakar*, 29 F.4th at 132 (quoting *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021)). The court "may not itself supply a reasoned basis for the agency's actions that the agency itself has not given," *Brodsky v. U.S. Nuclear Regul. Comm'n*, 704 F.3d 113, 119 (2d Cir. 2013) (internal citation and quotation marks omitted), and the "agency must defend its actions based on the reasons it gave when it acted," not on "impermissible *post hoc* rationalizations," *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24 (2020). Review under the APA is "narrow and deferential" and is "limited to examining the administrative record to

determine whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Kakar*, 29 F.4th at 132 (citations omitted).

> [S]o long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may reasonably be discerned.

*Karpova v. Snow*, 497 F.3d 262, 268 (2d Cir. 2007). The burden of showing an agency action was arbitrary or capricious rests with the plaintiff. *See Vermonters for a Clean Env't, Inc. v. Madrid*, 73 F. Supp. 3d 417, 422 (D. Vt. 2014).

## **Analysis**

Plaintiffs raise four arguments to support their claim that 8 C.F.R. § 214.205(a) is arbitrary and capricious: (1) USCIS failed to articulate a reason for treating pre-effective-date applicants differently than post-effective-date applicants; (2) USCIS failed to consider reasonably obvious alternatives; (3) USCIS failed to consider the reliance interests of pre-effective-date applicants, who were entitled under the old regulations to BFDs; and (4) USCIS's choice to end BFD review for pre-effective-date applicants rested on a clear error in judgment. The Government's motion for summary judgment takes the opposite position on each point. The court begins with the most fundamental administrative principle—whether USCIS articulated an explanation for its decision.

### I. Whether USCIS Set Out a Satisfactory Explanation for 8 C.F.R. § 214.205(a)

While an "'agency is not required to author an essay'" explaining its decision, "the court must be able to 'discern the why and wherefore' of the agency's decision-making process." *Solondz v. Fed. Aviation Admin.*, 141 F.4th 268, 277 (D.C. Cir. 2025) (quoting *Friedman v. Fed. Aviation Admin.*, 890 F.3d 1092, 1099 (D.C. Cir. 2018)) (further citation omitted). Where an

agency "has not made public the key findings or reasoning" related to a particular decision, it may be "unclear" to the court how the agency "resolved apparent contradictions" in its conclusion. *Id.* Here, Plaintiffs argue that USCIS failed to explain why it chose to make pre-effective-date applicants ineligible for BFDs, except in cases where RFEs are issued. They further contend that the data USCIS cited and the rationale it articulated in support of its decision to implement a streamlined BFD process supports the inclusion of pre-effective-date applicants in that process.

In the preamble to the Final Rule, USCIS discussed the comments it received and the general reasons for the new rule. Of note, "[c]ommenters urged USCIS to uphold the regulatory mandate to provide BFDs. They emphasized that BFDs provide work authorization, which allows survivors to be self-sufficient and help reduce the risk of revictimization as well as provide access to federally funded public benefits." 89 Fed. Reg. 34864, 34875.

> Commenters also wrote that BFDs are much more important given increased processing times, especially as applicants lose access to time-limited social services benefits. Commenters indicated that USCIS's failure to conduct BFDs . . . has led to survivors being removed while their applications were pending. Multiple commenters noted that applicants are forced to proceed with other forms of relief in removal proceedings while awaiting a decision on their T visa applications, which wastes administrative resources and inflicts needless trauma.

*Id.* As discussed above, USCIS acknowledged the longer processing times—about 1.25 years on average—and the need to implement a streamlined BFD process. USCIS's stated goal in amending the BFD process was therefore "to help stabilize bona fide applicants faster." *Id.* at 34892. USCIS anticipated that the new process "could add additional time" to the review process and estimated that, if any additional time was required, "any particular case requiring additional time should not take more than an additional 15 to 30 minutes." *Id.* at 34908.

Plaintiffs note that they, like applicants who have filed on or after August 24, 2024, faced lengthy processing times when the Final Rule was promulgated and would benefit from BFDs—or suffer without them. (Doc. 28 at 11.) By the time the earliest-filing plaintiff filed their T visa application on August 14, 2023 (Doc. 6 ¶ 209), there were at least 11,503 applications pending, and there would be 14,955 applications pending by the end of September. USCIS, *Number of Form I-914, Application for T Nonimmigrant Status by Fiscal Year, Quarter, and Case Stats: Fiscal Years 2008–2023*, https://www.uscis.gov/sites/default/files/document/data/i914t_visastatistics_fy2023_q4.pdf [https://perma.cc/BPL9-8C4N]. With USCIS processing about 4,500 applications per year, *see id.*, and a cap of 5,000 T visa grants per year, even the earliest-filing plaintiff still had a long wait ahead of them in August 2024 when the Final Rule went into effect.

These data, which USCIS had in its possession during the formulation of the Final Rule, indicate that the rationale for amending the BFD process applied to the plaintiffs in this case—and that USCIS knew or should have known that applicants in their position would face lengthy processing times even after the promulgation of the Final Rule. Plaintiffs point to such data to argue that USCIS's reasoning in excluding pre-filing-date applicants was faulty and that USCIS is not treating like cases alike.

Unfortunately, nowhere in the administrative record does USCIS explain its choice for making pre-effective-date applicants ineligible for BFDs unless a given applicant also receives an RFE. It is therefore "unclear" to the court how the agency "resolved [the] apparent contradictions" between the data in front of it and the decisions it made. *Solondz*, 141 F.4th at 277. It is possible that USCIS had a good reason for the choice it made. But the current record provides no answer.

The Government responds that "Plaintiffs cannot point to a single comment that USCIS received that pertained to concerns that existing applicants would not receive *bona fide* determinations" and that "'[a]n agency cannot be faulted for failing to discuss at length matters only cursorily raised before it.'" (Doc. 26 at 19 (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 226 (2016) (Ginsberg, J., concurring)). The Government also contends that the fact

> that USCIS created a path for pre-August 28, 2024[,] applicants to obtain BFDs implicitly demonstrates that the agency did consider existing applicants and created a way for them to obtain interim benefits in the event that the adjudication of their applications is unexpectedly prolonged due to the need for additional evidence.

(*Id.* at 22.)

In evaluating the Government's argument, several points are worth noting. First, every BFD regulatory regime prior to the 2024 Final Rule made all T visa applicants eligible for BFDs. Excluding most pre-effective-date applicants was therefore a change in USCIS policy. When an agency changes positions, it need not "show 'that the reasons for the new policy are *better* than the reasons for the old one.'" *Food & Drug Admin. v. Wages & White Lion Invs., LLC*, 604 U.S. 542, 570 (2025) (quoting *FCC v. Fox Television,* 556 U.S. 502, 515 (2009)). But it must show "awareness that it *is* changing position" and supply "good reasons for the new policy." *Fox Television*, 556 U.S. at 515. That is, it is not enough that USCIS's choices "implicitly demonstrate[]" that it considered whether or not to make pre-effective-date applicants eligible for BFDs. USCIS had an affirmative duty to explain its departure from its prior policy.

As for the fact that USCIS received no comments expressing concern about availability of BFDs to all T visa applicants, the court notes that USCIS's announcement that it was reopening the comment period for the 2016 IFR gave no indication that USCIS might exclude some applicants from BFD eligibility. (*See* Doc. 24-1 at 59–60.) Given that USCIS had always

included all applicants in the past, commenters had no reason to think that USCIS might make existing applicants ineligible for BFDs. It is unsurprising that no one commented on that issue. Furthermore, all of the comments USCIS received about the negative impacts of the old BFD regime on T visa applicants *were about existing applicants*. That is, commenters were expressing concern that pre-filing-date applicants were actively suffering because they did not have BFDs. Those amount to comments that pertained to existing applicants' ability to receive BFDs and alerted USCIS that, even during the comment period in 2021, applicants were facing processing delays significant enough that they were experiencing real harm.

Given the data before it, the comments it received, and the fact that it was changing its policy of making all T visa applicants BFD-eligible, USCIS was required to explain its decision to exclude most pre-effective-date applicants from BFD review.

**II. Failure to Consider Reasonably Obvious Alternatives**

Plaintiffs separately argue that USCIS failed to consider reasonably obvious alternatives when drafting the 2024 Final Rule. When amending a rule, an agency is "not required . . . to 'consider all policy alternatives,'" *Regents*, 591 U.S. at 33 (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 51 (1983)), but it must consider alternatives "within the ambit of the existing standard." *State Farm*, 463 U.S. at 51. An agency must consider only "significant and viable and obvious alternatives." *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 215 (D.C. Cir. 2013) (internal quotations and citations omitted).

Plaintiffs suggest two alternatives that USCIS should have considered: (1) maintaining the status quo under the 2016 IFR for pre-effective-date applicants; or (2) after passage of background checks, providing automatic BFDs to applicants whose applications had been pending for twelve months or more. (Doc. 25-1 at 20–21; Doc. 28 at 15.) Another reasonably

obvious alternative was simply extending the new BFD process to existing applicants—though USCIS presumably considered that option and, as discussed above, failed to explain why it rejected that option.

Taking up the issue of automatic BFDs first, the court agrees with the Government that such an alternative was not "within the ambit of the existing standard" under the 2016 IFR. By definition, the purpose of BFD review is to provide interim benefits to the applicants *who are most likely to be eligible* for a T visa. That requires some kind of review of the application. Granting automatic BFDs would also likely exceed USCIS's authority, as 22 U.S.C. § 7105(b)(1)(C), (E) specifies that a T visa applicant's application must be bona fide in order for them to be eligible for benefits, and 8 U.S.C. § 1227(d)(1) allows USCIS to grant stays of removal only to applicants who have "set[] forth a prima facie case for approval." As noted above, USCIS has defined applications that have "set[] forth a prima facie case for approval" as applications that are bona fide. 89 Fed. Reg. 34875 n.15. Granting automatic BFDs with no review would stretch the definitions of "bona fide" and "prima facie case for approval" to a breaking point.

As for continuing to apply the 2016 IFR standards for pre-effective-date applicants, the Government responds that USCIS considered that option "but ultimately decided to forego" it because "maintaining the status quo and having two separate paths for applicants was not practical and [was] inconsistent with the goals of the T nonimmigrant program." (Doc. 30 at 11.) In support of that argument, the Government cites to 89 Fed. Reg. 34875–76, which is USCIS's general explanation for adopting the 2014 Final Rule. Nowhere in those pages does USCIS indicate that it considered applying the 2016 IFR standards to existing applicants or, if it did,

why it decided to forgo that option. The pages that the Government cites to *do*, however, explain why the 2016 IFR framework was not viable:

> Although an extensive BFD process was codified in the 2016 IFR, such a process has not been implemented in the last decade outside of litigation cases due to resource constraints and the inefficiencies of the prior process. Under the extensive BFD review process set forth in the IFR, USCIS generally adjudicated the merits of T nonimmigrant applications in the same amount of time that it would take to issue a BFD.

89 Fed. Reg. 34875.

USCIS was only required to consider viable alternatives. There were already 14,955 T visa applications pending by the end of September 2023, and that number was growing. A process that was too time consuming when there were many fewer pending applications was surely too time consuming for all pre-effective-date applicants when USCIS promulgated the 2024 Final Rule. USCIS was therefore not required to consider it. *See Nat'l Shooting Sports*, 716 F.3d at 215 (agency need consider only "significant and viable and obvious alternatives").

The obvious alternative that USCIS needed to consider was the one it presumably did consider: applying the new, streamlined process to all T visa applicants, regardless of filing date. The error, as discussed above, was failing to explain why it rejected that option, especially given USCIS's prediction that BFD review would require, at most, 15 to 30 additional minutes of processing time. 89 Fed. Reg. 34908.

## III. Failure to Consider Reliance Interests

"In explaining its changed position, an agency must [ ] be cognizant that longstanding policies may have 'engendered serious reliance interests that must be take into account.'" *Encino Motorcars*, 579 U.S. at 221–22 (quoting *Fox Television*, 556 U.S. at 515). When agencies change course, they are therefore "required to assess whether there were reliance

interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Regents*, 591 U.S. at 33.

Here, Plaintiffs argue that they had reliance interests in the 2016 IFR's guarantee of BFD review for all T visa applicants. The Government responds that Plaintiffs "cannot assert a reliance interest in something that did not exist," pointing out that USCIS never implemented routine BFD review under the 2016 IFR because of resource constraints. (Doc. 26 at 16.) It further argues that, even if some plaintiffs had reliance interests, those who filed after the publication of the Final Rule but before its effective date were on notice of the impending change and could have waited to file their applications. Finally, the Government contends that, to the extent Plaintiffs had reliance interests in the 2016 IFR, USCIS considered those interests.

In *Regents*, the Supreme Court addressed a similar argument about reliance interests. There, the Government argued that recipients of Deferred Action for Childhood Arrivals ("DACA") had no reliance interests because "the DACA Memorandum stated that the program 'conferred no substantive rights' and provided benefits only in two-year increments." *Regents*, 591 U.S. at 30–31. The Court rejected the notion "that such features automatically preclude reliance interests," stating that "disclaimers are surely pertinent in considering the strength of any reliance interests, but that consideration must be undertaken by the agency in the first instance, subject to normal APA review." *Id.* at 31. In other words, the Court emphasized that the initial question of whether any reliance interests exist is part of the agency's task, and it must provide some explanation of what it found and how its findings impacted its decisions.

As discussed above, the 2016 IFR created a right to BFD review for T visa applicants without exception, even though USCIS chose not to comply with its own regulation. The Board of Immigration Appeals recognized as much, repeatedly holding in the context of removal

proceedings that USCIS was required to conduct BFD review. *In Re: Janet Salgado*, File AXXX XX3 164, 2018 WL 3416264, at *2 (B.I.A. May 16, 2018) ("[T]he regulations governing adjudications of T visas provide that USCIS must make an initial determination whether an application for a nonimmigrant T visa is bona fide."); *In Re: Karen Marisol Roblero-De Leon*, File AXXX-XX0-296, 2019 WL 2613114, at *2 (B.I.A. Mar. 12, 2019) ("USCIS must make an initial determination whether an application for a nonimmigrant T visa is bona fide.").

The Government is right that most T visa applicants did not receive BFDs under the 2016 IFR, but it also admits that some applicants successfully obtained BFDs through litigation under the 2016 IFR. (Doc. 26 at 16.) Those applicants, who had a cause of action for unlawful withholding of agency action under 5 U.S.C. § 706(1), therefore had an enforceable right to BFD review. Some T visa applicants may have seriously weighed the possibility of obtaining a BFD through litigation in deciding to apply for T visas; many applicants have never had contact with immigration authorities before applying, and alerting DHS to their whereabouts is a real risk. Knowing that a T visa application comes with the possibility of deferred action or an automatic stay of removal may therefore have been the difference for some applicants who were deciding whether to take that risk.

The 2024 Final Rule took away from pre-effective-date applicants the possibility of suing for a BFD, thereby affecting their rights and interests. USCIS was required to consider those interests, assess their strength, and weigh them against other policy concerns.

As for the plaintiffs who filed after the Final Rule was published but before it took effect, the court agrees with the Government that those applicants were on notice that they would not receive BFD review and therefore did not have reliance interests. But the picture is also not as simple as the Government suggests. In its view, "[h]ad Plaintiffs wanted to receive *bona fide*

determinations as contemplated by 8 C.F.R. § 214.205, they could have waited to apply on the Effective Date." (Doc. 26 at 18.) That argument ignores the reality of the T visa backlog, the cap of 5,000 grants per year, and ever-increasing processing times. Filing as soon as possible can make a significant difference in when someone receives a final adjudication. That in itself is an "important aspect of the problem" that USCIS seemingly "entirely failed to consider." *Kakar*, 29 F.4th at 132 (internal quotation marks and citation omitted).

The Government's remaining argument—that USCIS *did* consider reliance interests—falls flat. To support its argument, it cites to a portion of the Final Rule's preamble that recognized the need for a "streamlined and operationally efficient BFD process." (Doc. 26 at 20 (quoting Doc. 24-1 at 75).) That comment, in the Government's view, demonstrates that "USCIS acknowledged that its previous process was inefficient and unviable." (*Id.*) But recognizing that the 2016 IFR's regime was unworkable is not the same as considering the interests that the 2016 IFR engendered and how the 2024 Final Rule might affect them. The Final Rule contains no such discussion, as required by the APA.

## IV. Whether USCIS Made a Clear Error in Judgment

As discussed in Section I, USCIS failed to explain why it made Plaintiffs and similarly situated applicants ineligible for BFD review. The court also noted apparent contradictions between the data before USCIS and the decisions it made. Nevertheless, it is not the court's place to judge the propriety of USCIS's decision before it knows the actual reason for that decision. Plaintiffs' argument that USCIS made a clear error in judgment by excluding them from BFD eligibility therefore fails. Nevertheless, Plaintiffs are entitled to relief because of the above conclusions regarding USCIS's failure to satisfactorily explain its decision and to consider important aspects of the problem.

## V. Remedy

"When an agency action is held unlawful under the APA, the 'usual' remedy is vacatur and remand." *Nat. Res. Def. Council, Inc. v. U.S. Dept. of Interior*, 478 F. Supp. 3d 469, 488 (2d Cir. 2020) (citing *Guertin v. United States*, 743 F.3d 382, 388 (2d Cir. 2014)). In certain circumstances, "[a]n 'inadequately supported rule . . . need not necessarily be vacated,' because an 'agency may be able to rehabilitate its rule on remand, and the consequences of vacatur may be quite disruptive.'" *HIV & Hepatitis Pol'y Inst. v. U.S. Dep't of Health & Human Servs.*, 728 F. Supp. 3d 1, 15 (D.D.C. 2023) (second alteration in original; quoting *Shands Jacksonville Med. Ctr., Inc. v. Azar*, 959 F.3d 1113, 1118 (D.C. Cir. 2020)) (further internal quotation marks and citation omitted). "Because vacatur is the default remedy . . . defendants bear the burden to prove that vacatur is unnecessary." *Williams v. Walsh*, 648 F. Supp. 3d 70, 97 (D.D.C. 2022) (alteration in original; quoting *Friends of the Earth v. Haaland*, 583 F. Supp. 3d 113, 157 (D.D.C. 2022)).

Here, the Government has not requested remand without vacatur in the case of a ruling against it. Instead, it requests that the court "vacate only that provision" challenged by Plaintiffs "and order USCIS to utilize the BFD process set forth in the 2016 Interim Rule." (Doc. 30 at 13.) The considerations outlined by the D.C. Circuit Court also favor vacatur. The first factor in whether to remand without vacatur is "the likelihood that deficiencies in an order can be redressed on remand." *Advanced Energy United, Inc. v. Fed. Energy Regul. Comm'n*, 82 F.4th 1095, 1117 (D.C. Cir. 2023) (internal quotation marks and citation omitted). The court must therefore consider what USCIS's options would be on remand.

As noted above, "[i]t is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Regents*, 591 U.S. at 20 (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)).

> If those grounds are inadequate, a court may remand for the agency to do one of two things: First, the agency can offer a fuller explanation of the agency's reasoning *at the time of the agency action*. This route has important limitations. When an agency's initial explanation indicates the determinative reason for the final action taken, the agency may elaborate later on that reason (or reasons) but may not provide new ones. Alternatively, the agency can deal with the problem afresh by taking *new* agency action. An agency taking this route is not limited to its prior reasons but must comply with the procedural requirements for new agency action.

*Id.* at 20–21 (cleaned up).

Here, USCIS articulated no reason for excluding pre-effective-date applicants from BFD eligibility. To "rehabilitate" the rule, USCIS would therefore need to "deal with the problem afresh" by undergoing a new round of notice and comment rulemaking. That would not be a swift solution, and "leaving the regulations in place during remand would ignore Petitioners' potentially meritorious" claim that USCIS's decision was not rationally related to the evidence before it. *Am. Pub. Gas Ass'n v. U.S. Dep't of Energy*, 72 F.4th 1324, 1343 (D.C. Cir. 2023) (cleaned up).

As for the disruptive effects of vacatur, the court recognizes that vacating part of a regulation always creates some disruption. But vacatur in this case will not wreak the havoc that might occur where the regulation of an industry is involved, or where rights are taken away. Instead, USCIS would have an obligation to conduct BFDs for pre-effective-date applicants, whose numbers are dwindling as time passes and USCIS conducts more final T visa adjudications.

In certain circumstances, "[a] court may sever an unlawful portion of a rule under the APA," *New York v. Scalia*, 490 F. Supp. 3d 748, 795 (S.D.N.Y. 2020), and the "'invalid part' . . .

'may be dropped if what is left is fully operative as a law,' absent evidence that 'the [agency] would not have enacted those provisions which are within its power, independently of that which is not,'" *United States v. Smith*, 945 F.3d 729, 738 (2d Cir. 2019) (quoting *Buckley v. Valeo*, 424 U.S. 1, 108 (1976)).

The court "first ask[s] whether the agency would have adopted the same disposition regarding the unchallenged portion of the regulation if the challenged portion were subtracted." *World Shipping Council v. Fed. Mar. Comm'n*, 152 F.4th 215, 224 (D.C. Cir. 2025) (cleaned up). Here, the answer is yes. USCIS recognized the need for a streamlined BFD process and the complete unworkability of the procedures set forth in the 2016 IFR. Even without the provision limiting BFD eligibility to post-effective-date applicants and applicants issued RFEs, USCIS would have chosen to create a process it could actually implement and that was "consistent with DHS's victim-centered approach." 89 Fed. Reg. 34876.

The second part of the inquiry asks "whether the remaining parts of the Rule would 'function sensibly without the stricken provision.'" *World Shipping*, 152 F.4th at 225 (quoting *Sorenson Commc'ns Inc. v. FCC*, 755 F.3d 702, 710 (D.C. Cir. 2014)) (further internal citation omitted). Once again, the answer is yes. The only part of the 2024 Final Rule that Plaintiffs challenge is the phrase "on or after August 28, 2024" in 8 C.F.R. § 214.205(a) and the whole of § 214.205(a)(1). Excising those portions of the Final Rule would leave the entire regulatory structure in place, while simply extending the new, streamlined process to pre-effective-date applicants like Plaintiffs in this case.

**<u>Conclusion</u>**

Plaintiffs' Motion for Summary Judgement (Doc. 25) is GRANTED, and the Government's Cross Motion for Summary Judgment (Doc. 26) is DENIED. The court

VACATES the phrase "on or after August 28, 2024" in 8 C.F.R. § 214.205(a) and the whole of § 214.205(a)(1). The court ORDERS USCIS to initiate BFD review of Plaintiffs' applications under the procedures set forth in 8 C.F.R. § 214.205.

Nothing in this order prevents USCIS from undertaking a new round of notice and comment rulemaking to reinstate the portions of the 2024 Final Rule that the court has vacated, provided that USCIS complies with the requirements of the APA in the process. *See Oceana, Inc. v. Ross*, 275 F. Supp. 3d 270, 288 (D.D.C. 2017) ("When a court vacates a rule, the vacatur 'requir[es] the agency to initiate another rulemaking proceeding if it would seek to confront the problem anew.' In the new rulemaking, the agency 'complie[s] with the judgment . . . by filling the analytical gap identified in that opinion.'" (alterations in original; quoting *Indep. U.S. Tanker Owners Comm. v. Dole*, 809 F.2d 847, 845–55 (D.C. Cir. 1987); then quoting *Heartland Reg. Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (D.C. Cir. 2005))).

Dated at Burlington, in the District of Vermont, this 4th day of September, 2026.

Geoffrey W. Crawford, Judge
United States District Court